**FILED
CLERK**

2/29/2016 12:52 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RICHARD ARMSTRONG,

                Plaintiff,

  -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
-----------------------------------------------------------X

**ORDER**
14-CV-3174 (SJF)

FEUERSTEIN, J.

      Plaintiff, Richard Armstrong ("Plaintiff" or "Claimant" or "Armstrong"), commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final determination of defendant, Commissioner of Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for disability insurance benefits. The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, the Commissioner's motion is granted, its June 27, 2013 decision denying disability insurance benefits to Plaintiff is affirmed, and Plaintiff's cross-motion is denied.

**I.    BACKGROUND**

      *A.    Administrative Proceedings*

      On January 20, 2012,[1] Armstrong applied for social security disability insurance benefits, alleging an inability to work based upon several disabling conditions. DE 18, Tr., at 94. He claimed that he suffered from: 1) depression; 2) anxiety; and 3) cellulitis. *Id.* at 110. The Social

---

[1] Although the administrative law judge ("ALJ") and Defendant both represent that Plaintiff filed his application for disability insurance benefits on December 22, 2011, Plaintiff's benefits application indicates that he filed his application on January 20, 2012. *See* Docket Entry No. ("DE") 14, Mem. in Support of Def.'s Mot. J. Pleadings, at 1; DE 18, Tr. of Admin. Record ("Tr"), at 14, 94.

Security Administration denied his claim on August 9, 2012, and Claimant requested a hearing before an ALJ. *Id.* at 44, 46-49, 52-53. On June 4, 2013, ALJ Joseph R. Faraguna held a hearing where Claimant, represented by counsel, alleged that he suffered from: 1) venous insufficiency; 2) cellulitis; and 3) thrombus in the calf.[2] *See id.* at 16, 27-41.

On June 27, 2013, the ALJ decided that Claimant was not "disabled" between April 10, 1998 and December 31, 1998 pursuant to sections 216(i) and 223(d) of the Social Security Act (the "Act"), 42 U.S.C. §§ 416(i) and 423(d). *Id.* at 14-20. Claimant appealed to the Appeals Council that denied his request for a review of the ALJ's decision on April 25, 2014, thereby rendering the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

On May 21, 2014, Plaintiff filed a *pro se* action seeking judicial review of the Commissioner's final decision. DE 1, Compl. The Commissioner answered the complaint on August 29, 2014, and on February 19, 2015, the parties cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). DE 8, Ans.; DE 13-19, Mots.

### B.    *Non-Medical Evidence*

Plaintiff, who was born in 1957, was forty (40) years old as of April 10, 1998 (his alleged disability onset date) and forty-one (41) years old as of December 31, 1998 (his date last insured). DE 18, Tr., at 94. He completed high school and has some college education. *Id.* at 110. Although he initially reported in his benefits application that he had never worked, *id.*, he later stated that he had answered telephones and made deliveries for his parent's florist shop

---

[2] Although Armstrong claimed in his disability benefits application that he suffered from depression, anxiety, and cellulitis, he represented to the ALJ that he suffered from venous insufficiency, cellulitis, and thrombus in the calf. *See* DE 18, Tr., at 16, 110. Armstrong has provided no evidence supporting his claims of depression or anxiety from April 10, 1998 (his alleged onset date) through December 31, 1998 (his date last insured) and instead bases his Rule 12(c) motion for judgment on the pleadings upon his claims of chronic venous insufficiency, cellulitis, and thrombus in the calf that he raised before the ALJ.

2

from 1996 to 2006. *Id.* at 130. According to Armstrong, he cut his right leg in October 1998 and increased his dosage of antibiotics, which led to his being hospitalized for ten (10) or eleven (11) days in November 1998. DE 18, Tr., at 36. Armstrong testified that following his hospitalization, he remained in bed with his right leg elevated for "years." *Id.* at 38. He claims that during that time, he made phone calls for his parent's florist business through 2006. *Id.* at 39. At his administrative hearing, Armstrong also stated that he had been employed as a computer programmer in 1994 and had later worked as a construction worker for approximately one (1) year. *Id.* at 33. There is no evidence that Armstrong was employed after 2006.

### C. *Medical Evidence Prior to December 31, 1998 (Plaintiff's Date Last Insured)*

On June 13, 1997, about ten (10) months before Armstrong's alleged disability onset date of April 10, 1998, he visited Primary Medical Care and complained of a swollen right leg. *Id.* at 491. He reported that he had also had a lump and itchy pattern on his right leg since he was in his twenties. *Id.* On July 8, 1997, Armstrong again complained of the lump in his right leg and additional groin pain. *Id.* at 490. On July 16, 1997, he was prescribed an antibiotic, Floxin, for ten (10) days. DE 18, Tr., at 490.

More than one (1) year later, on September 1, 1998, Armstrong returned to Primary Medical Care and complained of a swollen leg since July 1997 and a new leg rash. *Id.* at 492. On September 11, 1998, he was diagnosed with a leg infection. *Id.* at 373-74, 492-93. In a September 11, 1998 letter, Dr. Steven Wilkins, a surgeon, wrote that Armstrong had complained of leg problems for over a year, and that Dr. Wilkins was treating Armstrong with antibiotics. *Id.* at 489. Upon physical examination, Dr. Wilkins found Armstrong to be a stocky, otherwise healthy male with a rash on his torso and extremities. *Id.* Armstrong's chest was clear, his abdomen was soft, and his right lower leg had a thickened leathery skin with a demarcation

3

above the ankle. *Id.* There were also skin ulcerations in the region of the lateral malleolus. *Id.* According to Dr. Wilkins, Armstrong's right leg appeared typical of chronic venous insufficiency with ulceration. *Id.* Armstrong was prescribed an Unna boot (a type of compression dressing for varicose veins and ulcers), advised to elevate his right leg, and referred to Dr. Khan, a vascular surgeon. *Id.*

On September 30, 1998, Armstrong underwent a venous ultrasound of his lower extremities, which revealed no left-sided reflux or deep vein thrombosis. *Id.* at 138. Reflux was identified in the right greater saphenous vein from the saphenofemoral junction down into the calf, giving rise to varicosities. *Id.* One of those varicosities demonstrated some thrombus, but neither right-sided lesser saphenous reflux nor deep venous reflux was present. *Id.*

On October 2, 1998, Dr. Khan diagnosed a venous insufficiency. DE 18, Tr., at 374. On October 8, 1998, Armstrong presented to Primary Medical Care with a recurring rash on his right lower leg. *Id.* at 371. He saw Dr. Khan again on October 21, 1998, when Armstrong complained of right leg pain and was diagnosed with intense cellulitis, dermatitis, and chronic venous insufficiency. *Id.* at 494. Armstrong was started on oral antibiotics, and Dr. Khan reported that if Armstrong did not respond to the antibiotics, Armstrong would need IV antibiotics, bed rest with leg elevation, and a continued compression stocking. *Id.* Dr. Khan also advised Armstrong that if Armstrong's right leg condition worsened, Armstrong would benefit from leg vein stripping and ligation. *Id.* There is no evidence that Armstrong followed up with Dr. Khan or consulted any other doctor between October 21, 1998 and December 31, 1998, the date Armstrong was last insured.

### D.     *ALJ's Decision*

On June 27, 2013, after conducting a hearing and applying a five (5)-step sequential analysis for disability set forth in 20 C.F.R. § 404.1520, the ALJ found that Claimant satisfied the first four (4) steps of the sequential analysis but failed the fifth step of being unable to work a job in the national economy.  DE 18, Tr., at 19.  The ALJ determined that Claimant was not "disabled" pursuant to the Act and not eligible for disability insurance benefits.  *Id.* at 20.

In its decision, the ALJ determined that although Claimant had worked from 1996 to 2006, including the time after he allegedly became disabled on April 10, 1998, Claimant had not posted earnings for that time period and thus had not engaged in work rising to the level of "substantial gainful activity" pursuant to 20 C.F.R. § 404.1571.  *Id.* at 16.  In the second step, the ALJ found that Claimant had the following severe impairments: venous insufficiency, cellulitis, and thrombus in the calf.  *Id.* at 16.  However, in the third step of the analysis, the ALJ determined that Claimant's impairments did not meet or medically equal the severity of any of the expressly listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 16-17.  The ALJ found that Claimant had a residual functional capacity ("RFC") to "perform the full range of sedentary work," defined as an ability to "lift no more than [ten] 10 pounds at a time, with occasional standing or walking that may range from very little to no more than two [2] hours in an eight [8]-hour day."  *Id.* at 17; 20 C.F.R. § 404.1567(a); Social Security Ruling 83-10.  The ALJ noted that Claimant's medical impairment of deep venous thrombosis in 1998 could reasonably be expected to cause his alleged symptoms of pain and swelling in his legs, but that Claimant's statements "concerning the intensity, persistence and limiting effects of th[o]se symptoms [were] *not entirely credible*," due in part to Claimant's statements that he worked in his parent's florist shop answering telephones and making deliveries up until 2006.  *Id.* at 17

5

(emphasis added). The ALJ also opined that Claimant's work in the florist shop "may have required *even more than* a sedentary exertional capacity." *Id.* at 18 (emphasis added). In the fourth step of the analysis, the ALJ found that Claimant was unable to perform any of his past relevant work through December 31, 1998, Claimant's last date insured, because Claimant had previously worked as a construction worker, which requires a "medium to heavy level of exertion" that Claimant could no longer perform. *Id.* at 17.

In the fifth step of the sequential analysis, the ALJ determined that Claimant: 1) was forty-one (41) years old as of the date he was last insured; 2) had a high school education; 3) communicated in English; and 4) given his "age, education, work experience, and [RFC]" for the full range of sedentary work, could have performed jobs that existed in significant numbers in the national economy between April 10, 1998 and December 31, 1998. *Id.* at 19. As a result, the ALJ found that Claimant failed to satisfy the fifth step of the sequential test for disability and held that Claimant was not "disabled" pursuant to Medical-Vocational Rule 201.27. *Id.* at 19-20.

## II. DISCUSSION

### A. *Standards of Review*

#### 1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A

court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is also limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

    2.  Review of Determinations by the Commissioner of Social Security

  Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009)). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id*.

  Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, the deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards regardless of whether the Commissioner's decision is supported by substantial

7

evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law *might* have affected the disposition of the case." *Id.* at 189 (emphasis added). If so, the Commissioner's decision must be reversed. *Id.*; *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless, and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

### B.    *Evaluation of Disability*

The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be entitled to disability benefits, a claimant must establish that he was disabled at the time that he met the insured status requirements of the Act. 42 U.S.C. §§ 423(a)(1)(A), 423(c); *see Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989) (holding for claimant to be eligible for benefits, claimant must be insured and disabled during the insured period). Disability benefits are available only where the claimant has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

8

42 U.S.C. § 423(d)(2)(A).

The Commissioner is required to apply a five (5)-step sequential analysis to determine whether an individual is disabled pursuant to the Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i) and (b). "Substantial work activity" involves "doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b). If the claimant is not engaging in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the next step only if the claimant's impairment both is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Social Security Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant is not found to be disabled at the third step, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity [("RFC")] based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The RFC is based upon whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the claimant] can still do despite [his or her] limitations." *Id*.

At the fourth step, the Commissioner compares its RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f). If the claimant can still perform his or her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers its RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, the claimant is not disabled. *Id*. If the claimant cannot make an adjustment to other work, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proving first four (4) steps of the sequential analysis, and the Commissioner has a limited burden of proof at the last step. *See Talavera*, 697 F.3d at 151.

*C.     Review of the ALJ's Decision*

Plaintiff contends that the ALJ erred at the third step of the sequential analysis by concluding that Plaintiff's impairments did not fall within any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Act ("Appendix 1"). DE 15, Pl.'s Mot. J., at 4. Plaintiff argues that because his impairments, in particular his chronic venous insufficiency, meet or medically equal one (1) or more of the listings in Appendix 1, the Commissioner was obligated to hold that Plaintiff was "disabled" from April 10, 1998 to December 31, 1998. *Id.* at 8. Defendant responds that the ALJ's decision indicated that the ALJ considered the listed impairments in Appendix 1 but found that "the requisite criteria for [those] relevant listings" in Appendix 1 were "absent from [Claimant's] medical record." DE 16, Mem. of Law in Further Support of Def.'s Mot. J, at 1; DE 18, Tr., at 16-17. Defendant further argues that even if Plaintiff's medical conditions meet the criteria and severity of the listed impairments in Appendix 1, Plaintiff has failed to establish that he satisfied the criteria in Appendix 1 prior to December 31, 1998, or the date Plaintiff was last insured. *Id.* at 1. Plaintiff replies that "[i]t is difficult to acquire medical records dating back to 1998 however an ALJ can not ignore a line of evidence that suggests disability." DE 17, Pl.'s Opp'n for Mot. J., at 10 (errors in original).

Defendant is correct that Plaintiff's various medical impairments do not satisfy the criteria and severity of the listed impairments in Appendix 1, especially given the fact that, despite his various impairments, Plaintiff answered phones and made deliveries for his parent's florist shop until 2006. Defendant also correctly notes that the medical evidence that Plaintiff submitted in his Rule 12(c) cross-motion for judgment on the pleadings is not time-stamped and thus cannot relate back to the time period between Plaintiff's alleged disability onset date (April 10, 1998) and date last insured (December 31, 1998), and that the medical records are irrelevant.

11

A review of the Commissioner's decision reveals that the ALJ's factual findings are supported by substantial evidence, and that he applied the correct legal standards to Plaintiff's administrative action. Despite his various medical conditions, Plaintiff has the RFC to perform the full range of sedentary work. There are "approximately [two hundred] 200 separate unskilled sedentary occupations [that] can be identified, each representing numerous jobs in the national economy . . . . [T]hese jobs . . . may be performed after a short demonstration or within [thirty] 30 days." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a). Plaintiff has not sustained his burden of showing that the Commissioner erred by concluding that Plaintiff had an RFC allowing him to perform the full range of sedentary work from April 10, 1998 to December 31, 1998. Plaintiff has failed to raise sufficient facts to advance a legal claim to disability insurance benefits that would be plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). As a result, Armstrong's action must be dismissed, and the Commissioner's final decision must be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted, its June 27, 2013 decision denying disability insurance benefits to Plaintiff is affirmed, and Plaintiff's Rule 12(c) cross-motion for judgment on the pleadings is denied. The Clerk of the Court is directed to close the case.

**SO ORDERED**.

    s/ Sandra J. Feuerstein
    Sandra J. Feuerstein
    United States District Judge

Dated: February 29, 2016
      Central Islip, New York